ANTONIO MARTÍN ROSADO, Plaintiff and Appellant, *v.*
OBDULIO CORREA, Defendant and Appellee.

No. 11041.    Argued February 1, 1954.—Decided February 16, 1954.

*José E. Bosch Roqué* for appellant.    *José R. Fournier* for
appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the
Court.

By public deed executed in 1949, Obdulio Correa and
his wife sold to Antonio Martín Rosado a lot with two rein-
forced concrete buildings, located on Comerío Street, Baya-
món.   That lot is adjacent in the rear to another lot belong-
ing to the same vendors.   Formerly, there existed on this
last lot a three-story building, the first story of concrete and
the other two of wood, which was destroyed by fire.   On
the building purchased by Martín Rosado a second story of

wood was erected and leased to the Club Deportivo of Baya-món. In order to reach that second story, a wooden stairway was used which was constructed by the Club Deportivo. This stairway deviated from another concrete stairway which existed previously on the other lot belonging to the vendors to which reference has already been made.

Subsequently, Martín Rosado demolished the second story of his building which housed the Club Deportivo. The wooden stairway leading to that second story was also destroyed. Since the vendors had constructed a three-story concrete building on the lot which was bounded in the rear by the lot of Martín Rosado, the former undertook the construction of a concrete stairway for the exclusive use of the new building in the same place where there existed previously the stairway which also led to the demolished second story of the building belonging to Martín Rosado. The latter urged Correa not to proceed with this construction. After Correa's refusal he filed a petition for injunction in the Bayamón Section of the former District Court, alleging that the defendant also intends to install an elevator on part of the premises occupied by the old stairway, and that such action bars access to the upper part of the building, thereby causing serious and irreparable damages to his property.

Defendant answered denying all the essential allegations of the complaint, and after a hearing was held on the merits, the court rendered judgment dismissing the petition.

Appellant now alleges that the trial judge attached an erroneous legal effect to the evidence offered and rendered judgment contrary to the evidence.

██ The lower court concluded that on the date of the making of the contract of sale between the plaintiff and defendant, there existed a second wooden story on the building acquired by appellant, as well as a stairway, also of wood, which, starting from the other lot belonging to defendant, led to the second story; that later on plaintiff demolished both the second story and the wooden stairway; that,

although the stairway in question could be considered as an apparent sign of a right-of-way, the sixth clause of the contract of sale was equivalent to a covenant to the contrary to which reference is made in § 477 of the Civil Code, 1930 ed., and that, therefore, plaintiff's property had not acquired a right-of-way over defendant's.

Admitting that the stairway in question was an apparent sign of a right-of-way, it could not be considered as acquisitive title to such servitude. A right-of-way which is discontinuous and apparent may only be acquired by virtue of a title. Section 475 of the Civil Code; *Pabón* v. *Ayala*, 71 P.R.R. 878. However, § 477 of that Code provides as follows:

"Section 477.—The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

There is no controversy in this case in that the apparent sign was not removed before the execution of the deed of conveyance of one of the properties. On the other hand, such deed does not contain an express covenant to the effect that the servitude would cease. The parties, however, covenanted in the sixth clause of the deed of sale as follows:

"Sixth: The parties, Obdulio Correa and his wife Carmen Sánchez, and Antonio Martín Rosado agree to constitute a servitude for the purpose of erecting a party wall at the rear of the lot sold to Antonio Martín Rosado, which is adjacent at the rear of the lot described hereinbefore under letter 'B,' and Antonio Martín Rosado does hereby grant leave to Obdulio Correa to use the wall erected at the rear of both lots, both parties having the right to use and enjoy as party wall the wall erected at the rear of the two lots, and to use it for any building, construction or as foundation for any building which may

be erected on the lot belonging to Obdulio Correa, for the reconstruction of the building of Antonio Martín Rosado, subject to the conditions of the Civil Code of Puerto Rico governing the servitude of party walls. The parties covenant that both will enjoy in like conditions the benefits of this servitude."

According to the foregoing clause, both the defendant and the plaintiff may use the party wall for any building, construction or as foundation for the construction of a building, subject to the provisions of the Civil Code governing servitudes of party walls. The defendant has the right to raise the party wall if he so desires. Section 513 of the Civil Code; *Monclova* v. *Blanco*, 40 P.R.R. 293. Since the party wall in question divides both estates at their respective rears, the continuation of the right-of-way would render physically impossible the enjoyment of the servitude of a party wall expressly agreed by the parties. Conversely, the enjoyment of the servitude of a party wall would exclude the physical possibility of using the right-of-way. *Cf.* Judgment of the Supreme Court of Spain of May 24, 1933. Consequently, the sixth clause has all the substance and effect of a covenant which is contrary to the continuation of the right-of-way. This being so, it can not be held that defendant's property is encumbered by the right-of-way in favor of plaintiff's property on the basis of the presumption established in § 477 of the Civil Code.

Regarding the servitudes whose titles stem from the presumption established in § 477, considered by the text writers as constituted by the will of the father of a family, Francisco Bonet Ramón, Professor of Civil Law in the University of Barcelona in 1942, states as follows:

"In our opinion, this is a case of tacitly constituting a servitude which is derived from the presumptive will of the original sole owner of the two tenements. In fact, if he had established on one of these tenements an encumbrance or service for the other, and later sold both tenements by an act *inter vivos* or *mortis causa* in favor of different vendees, without

making any mention of that encumbrance, the moment the property is conveyed the encumbrance which at first did not have the character of a servitude, because *nemini res sua servia,* shall acquire such character and the servitude is constituted.

"As pointed out by Josserand, . . . the will of the father of a family does not actually constitute an original and different mode of acquisition of servitudes but a particular case of acquisition by title. The co-owner could have stipulated, at the time the two tenements were divided, that the state of fact established by him was to be maintained, and such stipulation would have been so natural that the legislator understands or presumes it, and the will of the father of a family is none other than the concrete and appropriate manner attached to the legal presumption. In synthesis, this institution is, therefore, of *probatory nature;* it discharges a function, considering all proportions, analogous to that recognized to the acquisitive prescription; it evidences the will to establish a servitude and, consequently, the existence of this servitude, in the same manner that prescription establishes the existence of a property right.

"In order that a servitude be constituted by the will of the father of a family, the following requirements must be met:

(1) A *state of fact,* from which it should appear, by acts or visible signs, that one of the tenements was subject to an encumbrance in favor of the other tenement belonging to the same owner, which encumbrance, if the tenements had belonged to different owners, would have constituted the object of a servitude. (2) The *permanent character* of such encumbrance, with respect to a service which one tenement should render to another as such, and which does not constitute a personal or transitory benefit which the sole owner may wish to derive from his property. (3) The existence of two different tenements belonging to the same owner which become the property of two different owners, or of two different parts of the same tenement, of which one was subject to an encumbrance in favor of the other, and which later are conveyed by the sole owner to two different owners. (4) That at the moment of conveying the property, the original owner has made no disposition regarding the encumbrance in question, thereby leaving the same in existence." (*Revista de Derecho Privado,* Vol. 26, pp. 411, 412.)

We cannot decide in the case at bar that the right-of-way impliedly remained in existence, for such a strict interpretation of the contract of sale as respects the creation of encumbrances contravenes such a conclusion. As held in the judgment of the Supreme Court of Spain of March 3, 1942, it is undeniable that the general legal principles and the case law established by that court tend to favor, as far as possible, the interest and condition of the servient tenement, since all matters relating to the creation of encumbrances should be strictly construed, although it is true that this classical rule of construction favorable to the property right may only prevail, as expressed in the Judgment of November 21, 1881, in doubtful cases.

On the other hand, we doubt that the special and summary proceeding of injunction is the proper remedy to protect an alleged servitude, which is lacking clear and true title and whose existence had not been previously determined. *Franco* v. *Oppenheimer*, 40 P.R.R. 144.

In view of the foregoing reasons, the judgment appealed from is affirmed.